# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

No. O8-CV-3643 (JFB)

———————————————

MICHAEL HAYNES,

Petitioner,

VERSUS

ROBERT ERCOLE,

Respondent.

———————————————

MEMORANDUM AND ORDER
June 8, 2011

———————————————

JOSEPH F. BIANCO, District Judge:

Michael Haynes (hereinafter "Haynes" or "petitioner") petitions this Court *pro se* for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction in the County Court of the State of New York, County of Suffolk, for manslaughter in the first degree (N.Y. Penal Law § 125.20(1)) and leaving the scene of an incident without reporting (N.Y. Vehicle and Traffic Law § 600(2)(a)).

Petitioner was sentenced to a determinate term of twenty-two years' imprisonment for manslaughter and an indeterminate term of one-and-one-third to four years' imprisonment for leaving the scene of an incident without reporting, both sentences to run concurrently, followed by a five year period of post-release supervision.

Petitioner challenges his conviction on the following grounds: (1) the evidence presented by the prosecution was insufficient to sustain petitioner's conviction for manslaughter in the first degree; (2) certain statements by the prosecution during summation were improper and had the cumulative effect of denying petitioner's right to a fair trial; (3) petitioner was denied his right to a fair trial when the trial court improperly curtailed his right to cross-examine Joey Cirilo; (4) a tape recording of a 911 call was improperly admitted into evidence, depriving petitioner of a fair trial; (5) petitioner did not receive effective assistance of counsel; and (6) petitioner's sentence of twenty-two years' imprisonment for manslaughter, when coupled with five

years of post-release supervision, exceeded the maximum term of twenty-five years for a class B felony.

For the reasons set forth below, petitioner's request for a writ of habeas corpus is denied in its entirety. As an initial matter, petitioner's claims that there was insufficient evidence to support a conviction for manslaughter in the first degree and that his right to cross-examine was curtailed are both procedurally defaulted. Additionally, all of petitioner's claims are without merit.

## I. BACKGROUND

The Court has adduced the facts below from the instant petition and the state court record in this case.

### A. The Underlying Facts

On July 21, 2002, petitioner left a bar called Goodfellas in Patchogue, New York, with a group of friends at approximately 4:00 a.m. (T. 908, 1055.) Petitioner was going to drive some of his friends back home and the group headed to the parking lot to retrieve petitioner's car. (T. 910-11, 941, 1056-57.) When petitioner reached his car, he took out a baseball bat and a golf club, and started waving them around and talking loudly at nobody in particular. (T. 826, 842, 912, 942-43, 1059-60, 1097, 1100-01.) Herbert "Joey" Cirilo ("Cirilo") testified that petitioner was yelling "who wants it, who wants it, anybody can get it," as he scraped the floor of the parking lot with his bat (T. 942), and that it was obvious petitioner "wanted to fight somebody" (T. 959).

Sometime between 4:00 a.m. and 4:30 a.m., Ely Rosa ("Rosa") also left Goodfellas with his friend Chiwanna Wells ("Wells"). (T. 821, 823-24.) They walked across the street to the bank parking lot, where Rosa's car was parked. (T. 825.) As they entered the parking lot, they came across petitioner, who was next to a black Impala that had its doors open. (T. 826-27.) As Rosa and Wells walked past petitioner, Rosa commented to petitioner that he should calm down and go home. (T. 828, 847.) According to Wells and Crystal Afanador ("Afanador"), petitioner took this as disrespect and started talking back to Rosa. (T. 828, 1061.)[1] Cirilo testified that petitioner replied to Rosa's comments by saying, "what," as in "what's up? what you want to do?" (T. 915.) After Rosa reached his car, petitioner approached and swung his fist at Rosa, who then fought back. (T. 829-30.) Petitioner then backed away from Rosa, and Cirilo, petitioner's friend who was with him, came over and started fighting with Rosa. (T. 830-31.) During the fight, Rosa was thrown to the ground. (T. 831, 849, 851-52.) As Rosa, who did not appear injured, rose to his feet, petitioner's car hit him. (T. 832-35, 838, 852-54, 868, 880, 897, 922.) According to witness testimony, petitioner accelerated his car, diagonally across the parking lot and into Rosa who had been fighting Cirilo within empty parking spots. (T. 838, 975-76, 1113, 1182-1183, 1302-03, 1404.) The car struck Rosa's legs; Rosa's head then hit the windshield before his body flew into the air and dropped onto the pavement. (T. 834-35, 880, 922.) The car turned back and stopped. (T. 836, 867, 886.) According to eyewitness testimony, petitioner got out of the car, walked towards Rosa, and said something to the effect of "what now" or "look at you now" to Rosa, before being pulled back to the car by his girlfriend and driving off out of the parking lot. (T. 987, 1073, 1186, 1251.)

---

[1]   There were no reported problems or difficulties between petitioner and Rosa at the bar. (T. 823-24, 908.)

Rosa was taken by ambulance to Brookhaven Memorial Hospital (T. 705), and later died from blunt force trauma consistent with the impact from having been struck by a car. (T. 1591, 1599-600.)

Later on the morning of July 21, petitioner contacted Cirilo to find out "what just happened." (T. 928.) Petitioner also contacted Afanador, asking her if she "knew what was going on." (T. 1078-79.) He indicated to Afanador that he "wasn't thinking" at the time of the incident, but that he was going to get his car fixed. (T. 1080.) The police were able to identify the petitioner as the suspect after interviewing Wells, the mother of Raymond Villegas, as well as Afanador. (T. 732, 734, 1077-82.)

On July 22, 2002, petitioner surrendered to police with counsel. (T. 1365-67.) His black Chevrolet Impala was recovered from his house and analyzed by a forensic scientist. (T. 1454-61.) The car had visible damage to the left front turn-signal lens, the driver's side front windshield, and there was an abrasion along the midline of the hood. (T. 1462, 1472, 1492.)

Acceleration tire marks were discovered in the parking lot that were caused by petitioner's car. (T. 1516-17.) Acceleration tests were conducted in September of 2003 on petitioner's car. (T. 1473.) It was determined that petitioner's car drove into Rosa at the speed of twenty m.p.h. at the time of impact. (T. 1475, 1527.) There was no evidence of braking after the impact, but there was some evidence that the car steered left before the impact. (T. 1475-76, 1485-86, 1570-71.)

B. Procedural History

Petitioner was indicted on one count of murder in the second degree pursuant to

New York Penal Law § 125.25(2), one count of manslaughter in the first degree pursuant to New York Penal Law § 125.20(1), and one count of leaving the scene of an incident without reporting pursuant to New York Vehicle and Traffic Law § 600(2)(a). On November 6, 2003, petitioner was convicted following a jury trial in County Court, Suffolk County. Petitioner was acquitted of the murder charge. On February 10, 2004, petitioner was sentenced to a determinate term of twenty-two years' imprisonment for manslaughter, and an indeterminate term of imprisonment of one-and-one-third to four years for leaving the scene of an incident without reporting, both sentences to run concurrently, followed by a five year period of post-release supervision. (Sen. T. 17-19.)[2] Petitioner was also directed to pay a $210.00 surcharge. (*Id.*)

Petitioner appealed his conviction to the Appellate Division, Second Department. Petitioner argued on appeal to the Appellate Division that: (1) "it was error for the trial court to permit a tape of a 911 call into evidence when the caller expressed the opinion that Haynes purposefully drove his car into Ely Rosa"; (2) "the cumulative effect of the prosecutor's improper statements during her summation denied Haynes his right to a fair trial"; (3) "the prosecution failed to prove Haynes's guilt beyond a reasonable doubt and the verdict was against the weight of the evidence"; (4) "Haynes was denied his right to a fair trial when the trial court improperly curtailed his right to cross-examine Joey Cirilo"; and (5) "the sentence imposed upon Haynes was harsh and excessive and should be modified in the interest of justice." (Pet'r's Br. to

---

[2] "Sen. T." refers to the transcript of petitioner's sentencing.

App. Div. at 8-34.) Furthermore, in his supplemental brief to the Appellate Division, submitted *pro se*, petitioner claimed he received ineffective assistance of counsel due to his counsel's failure to: (1) investigate witnesses that would have exculpated the petitioner; (2) investigate and call a stricken juror that was present at the crime scene and had information about the case; and (3) request that the trial judge instruct the jury on the intoxication defense. (*See Pro Se* Br. to App. Div. at 9-13.) In a decision and order dated April 3, 2007, the Appellate Division affirmed petitioner's conviction. *See People v. Haynes*, 833 N.Y.S.2d 193 (App. Div. 2007). On June 6, 2007, the Court of Appeals denied petitioner leave to appeal. *See People v. Haynes*, 872 N.E.2d 884 (N.Y. 2007).

Petitioner applied to the Appellate Division for a writ of error coram nobis to vacate his conviction, on the ground of ineffective assistance of appellate counsel concerning the April 3, 2007 decision and order of the Appellate Division. However, the Appellate Division denied the application on April 15, 2008, holding that the petitioner failed to establish that he was denied the effective assistance of appellate counsel. *See People v. Haynes*, 854 N.Y.S.2d 675 (App. Div. 2008). Petitioner then appealed to the Court of Appeals. On July 21, 2008, the Court of Appeals denied leave to appeal. *See People v. Haynes*, 893 N.E.2d 449 (N.Y. 2008).

On August 26, 2008, petitioner filed a motion in Suffolk County Court, pursuant to N.Y.C.P.L. § 440.20, challenging the legality of his sentence, and, on October 30, 2008, the petitioner's motion was denied. Petitioner then appealed to the Appellate Division. However, on January 15, 2009, the Appellate Division denied petitioner's application.

On April 2, 2009, petitioner filed a motion with the Suffolk County Court, pursuant N.Y.C.P.L. § 440.10, to vacate his judgment of conviction. Petitioner challenged trial counsel's performance as ineffective for: (1) failing to adequately conduct pre-trial investigation and interview prospective witnesses; (2) waiving petitioner's statutory right to testify before a Grand Jury; (3) failing to allow the petitioner to testify on his own behalf at trial; (4) refusing to consult with the District Attorney's Office in regards to establishing plea negotiations; and (5) failing to move for a dismissal of the indictment as a whole or of the second degree murder charge. On June 5, 2009, the Suffolk County Court denied petitioner's motion. Petitioner then appealed to the Appellate Division. However, on September 11, 2009, the Appellate Division denied petitioner's application.

## C. Instant Petition

On August 29, 2008, the *pro se* petitioner filed his petition for habeas corpus pursuant to 28 U.S.C. § 2254. By motion filed on the same day, as well as on September 26, 2008, petitioner requested an order staying any action on his petition. In an order entered March 6, 2009, this Court granted the motion. Petitioner then filed his amended petition ("Amended Petition") along with a memorandum in support on October 28, 2009. Respondent filed a response opposing the Amended Petition on November 24, 2009. The Court has fully considered the submissions and arguments of the parties.

## II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set

forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis,* 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor,* 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 412-13. A decision is an "unreasonable application" of clearly established federal law if a state court

"identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams,* 529 U.S. at 411). The Second Circuit added that, while "some increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist,* 260 F.3d at 93 (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo.*'" *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir. 2006)).

## III. DISCUSSION

Petitioner's request for habeas relief is denied in its entirety. Petitioner's claims that there was insufficient evidence to convict him of first degree manslaughter, as well as his claim that he was unlawfully limited in his ability to cross-examine Cirilo, are both procedurally defaulted. Additionally, all of petitioner's claims are dismissed on the merits.

## A. Procedural Bar

As a threshold matter, respondent argues that two of petitioner's six claims are procedurally barred from habeas review by this Court. Specifically, respondent asserts that petitioner's claim of insufficiency of the evidence and his claim that his right to cross-examine was curtailed are both procedurally defaulted. The Court agrees. The Appellate Division's conclusion that these two claims were unpreserved for its review was based on an independent and adequate state procedural ground and, thus, these claims are procedurally barred from habeas corpus review. In any event, even assuming *arguendo* that these claims were reviewable, this Court, in the abundance of caution, has examined them on the merits and concludes that they are meritless.

### 1. Legal Standard

A petitioner's federal claims may be procedurally barred from habeas corpus review if they were decided at the state level on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id*. at 263 (internal quotation marks omitted). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks omitted). However, there is a "small category" of "exceptional cases in which [an] exorbitant application of a generally sound [procedural] rule renders the state ground inadequate to stop consideration of a federal

question." *Lee v. Kemna*, 534 U.S. 362, 376, 381 (2002). Nevertheless, "principles of comity . . . counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law." *Garcia*, 188 F.3d at 77 (quotation marks omitted).

If a claim is procedurally barred, a federal habeas court may not review the claim on the merits unless the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. Petitioner may demonstrate cause by showing one of the following: "(1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (2) the procedural default was the result of ineffective assistance of counsel." *McLeod v. Graham*, No. 10 Civ. 3778 (BMC), 2010 WL 5125317, at *3 (E.D.N.Y. Dec. 9, 2010) (citing *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)). Prejudice can be demonstrated by showing that the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To overcome procedural default based on miscarriage of justice, petitioner must demonstrate that "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" and would require "new reliable evidence . .

. that was not presented at trial." *House v. Bell*, 547 U.S. 518, 536-37 (2006).

## 2. Application

### a. Sufficiency of the Evidence

Petitioner asserts that there was insufficient evidence presented at trial for a jury to find him guilty beyond a reasonable doubt of manslaughter in the first degree. (Pet'r's Mem. at 10.) Specifically, he asserts that the evidence "only established a non-intentional homicidal act." (*Id.*) The Appellate Division held that this claim was "not preserved for appellate review because defense counsel failed to advance this specific argument in his motion to dismiss the charges of murder in the second degree and manslaughter in the first degree[,]" specifically referring to N.Y.C.P.L. § 470.05(2).[3] *Haynes*, 833 N.Y.S.2d at 195. In the alternative, the Appellate Division dismissed the claim on the merits. *Id.* The Court concludes that the Appellate Division's dismissal of this claim was based on an independent and adequate state law procedural ground. This Court is thereby barred from reviewing the claim on the merits.

It is clear that the Appellate Division relied on the preservation doctrine as an independent basis for dismissing petitioner's sufficiency of the evidence claim by

explicitly stating so. *See, e.g., Harris*, 489 U.S. at 261-63. Furthermore, New York's preservation doctrine is an adequate procedural ground because it is firmly established and regularly followed. *See Garvey v. Duncan*, 485 F.3d 709, 715-16 (2d Cir. 2007); *Glen v. Bartlett,* 98 F.3d 721, 724-25 (2d Cir. 1996) (finding that failure to preserve issue for appeal was adequate and independent state law ground precluding federal habeas review and further noting that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate ground, even where the state court has also ruled in the alternative on the merits of the federal claim"); *see also Fernandez v. Leonardo,* 931 F.2d 214, 215-16 (2d Cir. 1991).[4]

Notwithstanding petitioner's failure to preserve his claim, this Court may still consider it on the merits if petitioner can demonstrate either "cause and prejudice" for the procedural default, or that failure to consider the claim will result in a miscarriage of justice, *i.e.*, that he is actually innocent of the crimes for which he was convicted. *See Coleman*, 501 U.S. at 748-51; *Murray*, 477 U.S. at 496. Petitioner has

---

[3] The statute provides, in relevant part, that "[f]or purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y.C.P.L. § 470.05(2).

[4] Petitioner does not argue that the application of the preservation doctrine was exorbitant in his case. In any event, the preservation doctrine has been applied by New York courts to situations akin to the case at hand. *See, e.g., People v. Dien*, 77 N.Y.2d 885, 886 (N.Y. 1991) (holding that an issue was unpreserved for appellate review because "defendant made only a general objection"); *People v. Udzinski*, 541 N.Y.S.2d 9, 11 (App. Div. 1989) (holding that an issue was unpreserved for appellate review because "defense counsel did not object or except to the Trial Judge's definition of the term 'forcible compulsion' in its jury charge").

failed to demonstrate cause or prejudice. Petitioner makes no argument for why he had cause to not make a proper objection at trial. To the extent petitioner is suggesting that the procedural default was a result of ineffective assistance of counsel, "[w]here, as here, a petitioner cannot prevail on the merits of his claim[], he cannot overcome a procedural bar by claiming ineffective assistance of counsel." *McLeod*, 2010 WL 5125317, at *4 (citing *Aparcio v. Artuz*, 269 F.3d 78, 99 n.10 (2d Cir. 2001) and *Larrea v. Bennett*, 368 F.3d 179, 182 (2d Cir. 2004)); *see also infra* Section III.B.5.

Nor has petitioner demonstrated prejudice or that a miscarriage of justice would occur if the Court failed to review his claim on the merits. There is sufficient evidence on record that petitioner intentionally drove his car into Rosa, including, but not limited to, accelerating and driving his car at Rosa and subsequently getting out of the car and shouting "what now" or "look at you now." *See infra* Section III.B.1.

Thus, this Court is barred from reviewing petitioner's sufficiency of the evidence claim because it was dismissed on an independent and adequate state procedural ground. Petitioner has failed to demonstrate either cause and prejudice, or that a miscarriage of justice would occur if this Court did not review his claim. In any event, even if *arguendo* this claim was not procedurally barred, the Court concludes that it fails on the merits. *See infra* Section III.B.1.

b. Limiting Cross-Examination

Respondent argues that, in addition to petitioner's sufficiency of the evidence claim, his argument that he was wrongfully denied the right to cross-examine Cirilo is also procedurally barred from review. The Appellate Division held that the petitioner's "contention that the trial court improperly curtailed his right of cross-examination is unpreserved for appellate review[,]" and, in the alternative, denied it on the merits. *Haynes*, 833 N.Y.S.2d at 196. The Appellate Division's conclusion was based on an independent and adequate state law procedural ground. Thus, this Court is barred from reviewing this claim on the merits.

As noted *supra*, the preservation doctrine is an adequate state procedural ground because it is firmly established and regularly followed. It is also clear that the Appellate Division relied on the preservation doctrine as an independent ground for dismissing petitioner's claim that his right to cross-examine Cirilo was limited.[5]

Petitioner has failed to demonstrate either cause and prejudice, or that a miscarriage of justice would occur, should this Court fail to review his claim on the merits. As set forth *infra*, petitioner's right to cross-examine Cirilo was not inappropriately curtailed. *See also infra* Section III.B.3. In sum, this Court is barred

---

[5]  Petitioner does not argue that the application of the preservation doctrine to his claim was exorbitant. In any event, the preservation doctrine has been applied by New York courts to situations similar to that of petitioner. *See, e.g., People v. Fernandez*, 721 N.Y.S.2d 545, 546 (App. Div. 2001) (holding a claim unpreserved for appellate review because "the defendant did not object to the Supreme Court's refusal to allow him to ask this witness follow-up questions after the witness denied that he had been arrested for rape").

from reviewing petitioner's claim on the merits. However, in an abundance of caution, the Court has done so and concludes that it is meritless. *See infra* Section III.B.3.

## B.  Merits

For the reasons set forth *infra*, the Court finds all of petitioner's claims to be without merit.

### 1.  Sufficiency of the Evidence

Petitioner claims that the evidence presented at trial was legally insufficient for the jury to conclude that he was guilty beyond a reasonable doubt of manslaughter in the first degree, thus violating his Fourteenth Amendment right to due process of law.  (Am. Pet. at 3.)  Specifically, petitioner claims the evidence adduced by the prosecution did not establish the requisite intent element of the manslaughter charge.  (Pet'r's Mem. at 10.)  However, viewing the evidence in the light most favorable to the prosecution, a rational jury could have concluded beyond a reasonable doubt that petitioner was guilty of first degree manslaughter.  Therefore, the Appellate Division's finding that the evidence was sufficient, *Haynes*, 833 N.Y.S.2d at 195, was not contrary to, or based on an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the entire record.  Thus, habeas relief on this claim is denied.

#### a.  Legal Standard

The law governing habeas relief from a state conviction based on insufficiency of the evidence is well established.  A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in an application for a writ of habeas corpus.  *Einaugler v. Sup. Ct. of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997).  A criminal conviction in state court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original); *see also Policano v. Herbert,* 507 F.3d 111, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (quoting *Jackson,* 443 U.S. at 324)); *Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").  A criminal conviction will stand so long as "a reasonable mind 'might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Strauss,* 999 F.2d 692, 696 (2d Cir. 1993) (internal quotation marks omitted) (quoting *United States v. Mariani,* 725 F.2d 862, 865 (2d Cir. 1984)).  Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolves any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson,* 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson,* 443 U.S. at 326).

A habeas petitioner cannot prevail on a claim of legally insufficient evidence unless

he can show that, viewing the evidence in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Flowers v. Fisher,* 296 F. App'x 208, 210 (2d Cir. 2008) (quoting *Jackson,* 433 U.S. at 324). When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir. 1999).

### b. Application

In the instant case, petitioner argues that his conviction of manslaughter in the first degree was not based on legally sufficient evidence, specifically in proving the element of intent. The Appellate Division rejected this claim on the merits, holding that, "viewing the evidence in the light most favorable to the prosecution . . . the [petitioner's] intent to cause serious physical injury to the victim could reasonably be inferred from the testimony that he drove his car across the parking lot straight into the victim." *Haynes,* 833 N.Y.S.2d at 195 (internal citations omitted). For the reasons set forth below, the Court concludes that the Appellate Division's ruling was not contrary to, or an unreasonable application of, clearly established federal law. Nor was it an unreasonable determination of the facts.

Here, the evidence against petitioner on the charge of manslaughter in the first degree was legally sufficient. Under New York Penal Law § 125.20[1], "[a] person is guilty of manslaughter in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person." Each of the six eyewitnesses, who testified, were in concurrence that petitioner drove his car right at Rosa. According to

witness testimony, petitioner accelerated his car, diagonally across the parking lot and into Rosa who had been fighting petitioner's friend, Cirilo, within empty parking spots. Prior to driving his car into Rosa, petitioner was seen by his parked car holding a bat and a golf club, and was heard talking loudly. Cirilo testified that petitioner was yelling "who wants it, who wants it, anybody can get it," as he scraped the floor of the parking lot with his bat (T. 942), and that it was obvious petitioner "wanted to fight somebody." (T. 959.) Furthermore, Wells and Afanador testified that, as Rosa was passing petitioner in the parking lot, Rosa told petitioner to calm down and go home. According to Wells, petitioner took offense to Rosa's comments and found them disrespectful. Cirilo testified that petitioner replied to Rosa's comments by saying, "what," as in "what's up? what you want to do?" (T. 915.) Moreover, Wells testified that petitioner swung his fist at Rosa. A jury could have concluded beyond a reasonable doubt based on this evidence that there was animus between Rosa and petitioner which provided motive for petitioner to drive his car intentionally into Rosa. Additionally, many of the witnesses testified that after hitting Rosa with his car, petitioner got out of his car and went towards Rosa saying something to the effect of "what now" or "look at you now," before being pulled back to his car by his girlfriend. (T. 987, 1073, 1186, 1251.)

In sum, even assuming *arguendo* that petitioner's sufficiency of the evidence claim was not procedurally defaulted, viewing the evidence admitted at trial in the light most favorable to the prosecution, the Court concludes that a rational jury could reasonably find that petitioner was guilty beyond a reasonable doubt of intentionally driving his car into Rosa. The Court, therefore, rejects petitioner's sufficiency of

the evidence claim on the merits and concludes that the Appellate Division's ruling was not contrary to, or an unreasonable application of, clearly established federal law. Nor was it an unreasonable determination of the facts.

### 2. Prosecutorial Misconduct During Summation

Petitioner asserts that the cumulative effect of the prosecutor's improper remarks during summation denied him a fair trial. (Pet'r's Mem. at 17.) As set forth below, there is no basis to conclude that any of the remarks by the prosecutor that petitioner takes issue with warrant habeas relief, especially when considered in the context of the entire trial. Thus, the Appellate Division's conclusion that the prosecutor's statements did not deprive petitioner of a fair trial was not contrary to, or an unreasonable application of, clearly established federal law. Nor was it an unreasonable determination of the facts in the light of the entire record.

### a. Legal Standard

"A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." *Gonzalez v. Sullivan,* 934 F.2d 419, 424 (2d Cir. 1991) (quoting *United States v. Young,* 470 U.S. 1, 11 (1985)). "Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'" *United States v. Shareef,* 190 F.3d 71, 78 (2d Cir. 1999) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 647 (1974)). For a claim of prosecutorial misconduct to suffice to establish a claim of constitutional error, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v.*

*Wainwright,* 477 U.S. 168, 181 (1986) (quotation marks omitted). "There must instead, be a showing that '[petitioner] suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.'" *Alexander v. Phillips,* 02 Civ. 8735(SAS)(FM), 2006 U.S. Dist. LEXIS 8926, at *40-41 (S.D.N.Y. Feb. 21, 2006) (quoting *Bentley v. Scully,* 41 F.3d 818, 824 (2d Cir. 1994)); *see also Dawkins v. Artuz,* 152 F. App'x 45, 46-47 (2d Cir. 2005) ("To warrant granting the writ, the prosecutorial misconduct must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" (quoting *Darden,* 477 U.S. at 181)). "[N]ot every trial error or infirmity which might call for the application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" *Donnelly,* 416 U.S. at 642 (quoting *Lisenba v. California,* 314 U.S. 219, 236 (1941)). The Court must then review such comments by a prosecutor narrowly to determine whether they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden,* 477 U.S. at 181 (quoting *Donnelly,* 416 U.S. at 642).

To overcome this burden, petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.'" *Bentley v. Scully,* 41 F.3d 818, 824 (2d Cir. 1994). Factors considered in determining such prejudice include "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prosecutorial

conduct." *Id. Accord United States v. Thomas,* 377 F.3d 232, 245 (2d Cir. 2004); *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990). "In addition, in determining whether a prosecutor's conduct was unconstitutional, a court 'must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's [remarks] . . . . If the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction.'" *Everett v. Fischer,* No. 00 Civ. 6300, 2002 WL 1447487, at *2 (E.D.N.Y. July 3, 2002) (quoting *Young,* 470 U.S. at 13-14) (alterations in original).

b. Application

Petitioner takes issue with five statements made by the prosecutor during summation. The first two statements relate to the burden of proof and were followed by sustained objections by the trial court. Petitioner argues that the third statement, which he did not object to at trial, "recklessly portrayed Mr. Haynes as a dangerous and violent person who was predisposed to committing acts such as intentionally running down pedestrians, thus, denying him his right to a fair trial." (Pet'r's Mem. at 20.) Finally, petitioner alleges that the prosecution "misstated the law" by indicating that motive was not something for the jury to consider and by telling the jury to consider the look on a witness's face in recounting the death of Rosa. (*Id.* at 21-22; Pet'r's Br. to App. Div. at 18-19.) The five statements petitioner objects to are as follows:

(1) "And as you sit here right now, did you hear any single piece of evidence that supported any single thing he [petitioner's counsel] told

you and promised you the evidence in this case would show?" (T. 1812.)

(2) "There were a lot of people in that parking lot, there is a lot of witnesses, what am I going to do now? Well, I'm going to say it was an accident, like he's been doing here for two weeks. I'm going to say it's an accident. Not one scintilla of proof to support that, but, okay, that's what I will do, I will cut my losses." (T. 1848.)

(3) "Perhaps there are other witnesses, like Crystal Afanador, who were simply afraid of the defendant, who knew the defendant, as she said, from growing up, and knew his family. And it gave her fear and caused her to not want to come forward to the police." (T. 1813.) "Then what does he do? He calls Crystal. He calls Crystal later in the day while she's at work at the Carvel. And how does he call her? He has a woman call, and he has the woman ask for Crystal, because, as Crystal told you, Crystal knows the defendant and his family from growing up in Patchogue. She was afraid." (T. 1850-51.)

(4) "Can I sit here and tell you the reason why? Maybe somebody spilled a drink on him. Maybe because the father of Anna's children was in the bar, just like the father of Crystal's children was in the bar. I don't know, that's all speculation. It's not anything I can have to prove. It's not an element of this crime. It's not something for you to consider." (T. 1850.) (no obj)

(5) "Do you remember the look on Ray Villegas' face when he was describing for you, that he's now sitting there on the ground and he's holding his friend [Rosa]. And he says when he got up, [he] realized [he] was covered in blood. Remember the look on his face? Keep that in mind when you evaluate his credibility. Keep that in mind when you think about how forthright he was, and whether or not you feel he was telling you the truth. Remember his demeanor on the stand, and remember that look on his face." (T. 1844.)[6]

Petitioner raised the five remarks in his appeal to the Appellate Division. The Appellate Division held that petitioner "failed to demonstrate that he was substantially prejudiced by the prosecutor's remarks on summation, or that any possible prejudice was not cured when the court sustained the defendant's objections and added a curative instruction to counter the remarks attempting to shift the burden of proof." *Haynes*, 833 N.Y.S.2d at 195 (internal citations removed). The question for this Court is whether the prosecutor's statements were in the realm of egregiousness that violates petitioner's due process rights. The Court concludes that the

---
[6] Petitioner did not object to statements three, four, and five during the prosecution's summation. Although respondent argued to the Appellate Division that these statements were procedurally barred from review as a result of petitioner's failure to object at trial, the Appellate Division ruled on the issue of the prosecutor's statements on the merits. Thus, the Appellate Division did not dismiss petitioner's claim based on these three statements on an independent state procedural ground and this Court, therefore, must address it on the merits.

Appellate Division's decision was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was it an unreasonable determination of the facts in light of the entire record.

First, this Court concludes that the five statements that petitioner argues were improper were not sufficiently severe as to warrant habeas relief when considered in light of the other factors. *See, e.g., Martin v. Brown*, No. 08-CV-0316 (JFB), 2010 WL 1740432, at *15 (E.D.N.Y. Apr. 29, 2010) ("In any event, even assuming *arguendo* that these or other comments by the prosecutor were improper, they were not severe or egregious and certainly did not render the trial so unfair as to deprive petitioner of his due process rights. Within the lengthy summation that involved an analysis of the trial evidence, the challenged comments did not play a substantial role in the summation, much less the entirety of the trial. . . . Moreover, given the overwhelming evidence of guilt, as discussed supra, even if the comments were improper, they would not warrant habeas relief because they clearly did not have a substantial or injurious effect or influence on the jury's verdict." (collecting cases)). *Cf. Floyd,* 907 F.2d at 348, 353-55 ("This is one of those rare cases where the improper comments in a prosecutor's summation were so numerous and, in combination, so prejudicial that a new trial is required[,]" concluding that dozens of improper statements made during both opening and closing statements were severe). The comments here were isolated and brief, and, as discussed below, the trial court minimized any prejudice by the instructions that were given to the jury.

The trial court minimized any prejudice to petitioner in its instructions to the jury. Before summations began, the court instructed the jury that: (1) "If a lawyer

asserts as fact, something that is not based on the evidence, you must disregard it. Remember, nothing the lawyer say[s] at any time is evidence." (T. 1746); (2) "It is your own recollection, understanding and evaluation of the evidence which controls, regardless of what the lawyers have said or will say about the evidence. You, and you alone, are the judges of the facts in the case." (T. 1747); (3) "During summations if I sustain an objection to a comment of a lawyer, that comment is stricken from the record, and you must disregard that comment as if it were never said. If I overrule an objection, the comment stands." (T. 1748); and (4) "You will note that at this stage of the proceeding it's not the evidence in the case, and for that reason you don't have your notebooks given to you at this time." (T. 1747). As noted above, during the prosecutor's summation, the court sustained defendant's objections regarding the prosecution's burden shifting comments. After summations, Mr. Majid, petitioner's counsel, asked the court to give a curative instruction for the prosecution's summation comments that shifted the burden of proof and which were sustained on objection. (T. 1872.) The trial court decided that adding an additional curative instruction referring specifically to these comments was unnecessary since "[t]he [c]ourt's charge is very clear, that there is actually no obligation on the part of the defendant to present any evidence. And there is no burden on the – on the defense." (T. 1873.) In the charge, the court instructed the jury that: (1) "[T]he defendant is presumed to be innocent." (T. 1882); (2) "[T]he burden of proof remains on The People, and there is no obligation whatsoever on the defendant to offer any evidence." (T. 1882); (3) "The defendant is not required to prove he is not guilty. In fact, the defendant is not required to prove or disprove anything. To the contrary, The People have the burden of

proving the defendant guilty beyond a reasonable doubt." (T. 1882); (4) "The burden of proof never shifts from The People to the defendant." (T. 1883); and (5) "That the defendant did not testify as a witness is not a factor from which any inference unfavorable to the defendant may be drawn." (T. 1878). This Court finds that the measures taken by the state trial court were sufficient to eliminate any potential prejudice from the prosecutor's burden-shifting statements. *See United States v. Walker*, 835 F.2d 983, 989 (2d Cir. 1987) ("When such a [burden-shifting] comment has been made, the court should sustain, not overrule, the defendant's objection, and it would be well advised to caution the government against making such arguments and to make a precautionary statement directly to the jury that the defendant has no such obligation. Nonetheless, the trial court's instructions to the jury at the close of the summations were entirely proper . . . .").

With respect to petitioner's argument that the prosecution misstated the law— namely, by telling the jury that they could not consider motive—the trial judge's jury instructions similarly minimized any prejudice. Specifically, the judge stated to the jury: "you must apply the law as I explain it. . . . When you judge the facts, you are to consider only the evidence. And the evidence in the case includes the testimony of the witnesses, and the exhibits that were received in evidence." (T. 1877.) On defining intent as required for a conviction for manslaughter in the first degree, the trial judge instructed the jury that they may infer intent from petitioner's conduct and "all of the circumstances surrounding [his] conduct." (T. 1900.) The judge specifically indicated that the jury could consider what petitioner did or said. (*Id.*) With respect to witness credibility, the trial judge stated that while "there is no particular formula for

evaluating the truthfulness and accuracy of another person's statements or testimony[,]" the jury could consider a number of factors, among them whether "the manner in which the witness testified reflect[ed] upon the truthfulness of that witness's testimony" and whether "the witness [had] a bias, hostility or some other attitude that [a]ffected the truthfulness of the witness's testimony." (T. 1886-87.) Thus, the trial judge made it clear that the jury was to follow the law as he instructed them and not what the prosecution may have suggested in its summation. Furthermore, the judge made it clear that the jury could consider petitioner's conduct suggesting motive and provided detailed instructions on how the jury was to evaluate credibility, including with respect to demeanor and bias.[7]

Furthermore, as respondent argues, the third allegedly improper summation statement about Afanador being afraid of petitioner may, in fact, have been a fair response to some of defense counsel's summation statements regarding the absence of other witnesses. (*See* Resp't's Mem. at 15.) For instance, defense counsel made the following comments during summation: (1) "Then you also heard a lot of names from people who never took the stand. Who never came forth to tell what happened that night, even though they were part of this investigation." (T. 1756.); (2) "Yesterday you heard Detective Leser take the stand, and he told you that he obtained information from people such as Mark Burgess, Jose Pena, Wendy Leventhal. Where were they? Why were they not called to tell you about

what happened that night?" (*Id.*); and (3) "And the testimony from all those witnesses[,] all those eye witnesses that you didn't hear. Why not? Why not?" (T. 1760.) In view of such comments, it can reasonably be argued that the prosecutor's summation references to Crystal Afanador's fear of petitioner and his family were fair responses explaining why other witnesses may not have come forward to testify.

Finally, under the third prong of the analysis, petitioner has failed to show that his conviction was uncertain absent the challenged prosecutorial conduct. As the Second Circuit has noted, "[o]ften, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal." *United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir. 1981); *see also Bentley,* 41 F.3d at 824-25 (holding that review of a habeas corpus challenge based upon prosecutorial misconduct includes consideration of "whether the conviction was certain absent the prejudicial conduct[,]" finding harmless error and a failure to demonstrate a substantial or injurious effect where there was "compelling evidence in the prosecution's case . . . [and] the prosecutor's summation comments were both brief and isolated."); *Bradley v. Meachum,* 918 F.2d 338, 343 (2d Cir. 1990) ("The clear evidence of guilt demonstrates that [petitioner] was not prejudiced by the prosecutor's improper remarks."). In the instant case, overwhelming evidence was presented at trial for a jury to conclude beyond a reasonable doubt that petitioner was guilty of intentionally driving his car into Rosa so as to cause him serious physical injury. *See supra* Section III.B.1. Furthermore,

---

[7] Similarly, the prosecution's statement urging the jury to evaluate Villegas's demeanor in assessing his credibility was not improper and, in any event, would not provide a basis for habeas relief in this case.

evidence presented at trial was sufficient for a jury to conclude beyond a reasonable doubt that petitioner left the scene of the crime without reporting it.[8]

In sum, in light of all of the factors—including the overwhelming evidence of guilt at trial, the brief and isolated nature of the alleged objectionable comments, and the court's instructions to the jury—this Court finds that the prosecutor's summation statements did not cause the petitioner to suffer any actual prejudice that would have had an injurious effect or influence on the jury's verdict. Accordingly, the Appellate Division's conclusion that petitioner was not prejudiced by the prosecution's comments was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the entire record. There is no basis for habeas relief on this prosecutorial misconduct claim.

### 3. Limited Cross-Examination of Joey Cirilo

Petitioner claims that the trial court violated his right to due process and Sixth Amendment right to confrontation by limiting the cross-examination[9] of Joey Cirilo, a prosecution witness. As discussed *supra*, this claim is procedurally barred. In any event, this claim is without merit. Thus, the Court cannot conclude that the Appellate Division's conclusion that the trial court did not err in limiting the re-cross of Cirilo was contrary to, or based on an unreasonable application of, clearly established federal law. Nor was it an unreasonable determination of the facts.

Through cross and recross-examination, the defense tried to demonstrate that petitioner had driven in Rosa's direction not because he intended to drive into him, but because the only accessible exit by which to leave the parking lot required petitioner to drive past Rosa. (Pet'r's Mem. at 28.) In order to support this assertion, petitioner attempted to elicit through cross-examination that other available exits were blocked, specifically the south exit of the parking lot. Petitioner claims that the trial court improperly curtailed his right to cross-examine Cirilo regarding whether or not the south exit of the parking lot was blocked. (*Id*. at 23.) However, as shown by trial testimony described in detail below, on re-cross, Cirilo was asked multiple times whether the lanes of the south exit were blocked by parked cars, to which he answered no as he had done on cross. The

---

[8]    In his papers to the Appellate Division, petitioner raised an additional alleged "burden-shifting" statement by the prosecution to which defense counsel had objected at trial. The statement, in relevant part, was as follows: "Well, you heard that nobody said Joey threw [Rosa] in front of the car, pushed him in front of the car. Let's see if we [the defense] can change midstream and come up some other theory." (T. 1825-26.) Although the petitioner does not refer to this statement in his papers, the Court concludes, in any event, that its analysis *supra* is equally applicable to this alleged burden-shifting comment. As noted above, the trial court sustained defense counsel's objection to the statement and addressed the burden of proof issue in his instructions to the jury. Furthermore, as noted *supra*, petitioner was not prejudiced as there was overwhelming evidence for the jury to convict him.

[9]    In his petition, petitioner alleges that the defense's cross-examination of Joey Cirilo was limited. However, it was actually the recross-examination of Joey Cirilo that petitioner was referring to.

prosecution objected each time on the ground that the witness had already answered the question on cross, but her objections were overruled and the question was allowed. Subsequently, the judge sustained some of the prosecution's objections when they referred to this repetitive line of questioning. The colloquy on re-cross of Cirilo was as follows:

Q: You said that Michael could have just made a right turn out of that parking lot.

A: Yes, he could have went through the bank tellers.

Q: Do you know if those bank tellers have gates?

A: There is no gates there.

Q: How do you know?

A: Because I know. Because cops park there. There is always either the cops there or a cop parked in-between there.

Q: And sometimes there are other cars parked in there?

A: No, there is cars coming in there.

MS. KELLY: Judge, this has been asked and answered.

THE COURT: Overruled.

A: You can't park your car right in front of an ATM machine, people have to use it. The cops could, because they can do what they want. But regular person can't park their car there. . . .

Q: Umm-hum. But you don't know if there was anything blocking that at that time?

MS. KELLY: Objection, it was asked and answered. The witness already indicated there wasn't.

THE COURT: Sustained. Sustained. You don't have to answer it.

MR. MAJID: Judge, he just was asked on redirect if he could have made a right out of that parking lot. He answered, yes. So I'm asking him if he knows whether there was anything blocking that exit out of the parking lot.

MS. KELLY: He already answered that question.

THE COURT: I will allow it to be asked again.

A: There was no cars parked there.

Q: You don't know if there was?

MS. KELLY: Judge, Judge.

THE COURT: Sustained, sustained.

A: There's never –

THE COURT: You don't have to answer it, Mr. Cirilo.

Q: You said before that you didn't know how many cars were in that parking lot, correct?

A: Yes.

Q: And you don't know where those cars were in the parking lot, correct?

A: Correct.

Q: So you don't know for sure if there were cars that Michael might have had to go around to go to that south exit?

MS. KELLY: Objection, Judge.

THE COURT: Overruled.

A: There was no cars in the middle where he could have went. . . . .

Q: Where Michael was parked, in order to get to the exit on the south side, if there were cars parked there, wouldn't he have to go around those cars, either back up, or go to the left, and make a circle to go to the south parking?

A: If there was cars there.

MS. KELLY: Objection, relevance.

THE COURT: Sustained. Sustained. You don't have to answer it. You don't have to answer that question.

THE WITNESS: I know.

17

Q: So you don't know for sure if Michael could have used that south exit at that moment in time, do you?
MS. KELLY: Objection.
THE COURT: Sustained.
Q: Do you know whether Michael could have used that south exit or not at that time?
MS. KELLY: Objection.
THE COURT: Sustained.

(T. 1037-41.)

Trial judges retain wide latitude to impose reasonable limitations on cross-examination. *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986), *United States v. Flaharty,* 295 F.3d 182, 190 (2d Cir. 2002). This Court agrees with the Appellate Division's holding that the trial court "properly sustained additional objections in order to prevent repetition and to protect the jury from being misled." *Haynes*, 833 N.Y.S.2d at 196. Petitioner's trial counsel was permitted to ask Cirilo multiple times whether there were cars blocking a particular exit that petitioner could have taken without having to drive in Rosa's direction. Trial counsel was attempting to ask the same question many times in the hopes of getting Cirilo to give an answer that would have been favorable to petitioner's theory of the case: that he had to drive towards Rosa in order to get to the only available exit from the parking lot.

Even assuming *arguendo* that there was error and that the cross-examination was improperly curtailed, such error was harmless. Habeas relief requires that any constitutional error "had substantial and injurious effect or influence in determining the jury's verdict," and that the error resulted in "actual prejudice." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (quotation marks omitted). In this case, no prejudice was shown. Even if further repetitive questioning was to have elicited from the witness that the south exit may have been blocked, this did not have a reasonable probability of affecting the jury's verdict because the evidence presented at trial overwhelmingly shows that the petitioner drove in the direction of the victim with the intent of striking the victim and not with the intent of exiting the parking lot. *See supra* Section III.B.1. The Appellate Division's conclusion that this claim was without merit was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts. Therefore, this claim does not warrant habeas relief.

### 4. Evidentiary Violation Regarding Tape Recording of 911 Call

Petitioner contends that the trial court erred in permitting into evidence parts of a 911 call of witness Tammy Brock ("Brock"), in which Brock stated that petitioner drove "purposely" into Rosa. Specifically, on two occasions during the 911 tape, Brock referred to petitioner's collision with Rosa as purposeful. (T. 1312, 1318.) Petitioner argues that it was error either to allow the 911 tape to play or, in the alternative, not to redact the word "purposely" from the tape, because it embodied the witness's opinion regarding petitioner's intent, an ultimate issue in the case. (Pet'r's Mem. at 31.) Thus, petitioner argues he was denied a fair trial.[10] The

---

[10] In petitioner's Amended Petition, he refers to the Federal Rules of Evidence. However, as respondent correctly notes, "[t]o the extent [petitioner] relies on the Federal Rules of Evidence in mounting his challenge, he is mistaken. These rules govern trials in federal, not state courts." *Flores v. Greiner*, No. 97 CV

Appellate Division agreed with petitioner that the trial court erred in admitting the 911 tape, but held that the error was harmless "in view of the overwhelming evidence of intent." *Haynes*, 833 N.Y.S.2d at 195. Respondent contends that the admission of the tape was not erroneous and, in the alternative, that the admission of the tape was harmless. (Resp't's Mem. at 21.) This Court agrees with the Appellate Division's ruling and finds that it was not contrary to, or an unreasonable application of, clearly established federal law.

### a. Legal Standard

It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983). *See generally Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[H]abeas corpus relief does not lie for errors of state law."). Instead, for a habeas petitioner to prevail in connection with a claim regarding an evidentiary error, a petitioner must "show that the error deprived her of a *fundamentally fair* trial." *Taylor*, 708 F.2d at 891 (emphasis in original); *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a *fundamentally fair* trial.'" (emphasis in original) (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988))). In other words, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'"

5671 (RR), 2000 WL 1052054, at *9 (E.D.N.Y. June 19, 2000).

*Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

To constitute a denial of due process under this standard, the erroneously admitted evidence must have been "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Id.* at 125 (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992)); *see also Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (holding that evidence must be "crucial, critical, highly significant").

Moreover, the Court "must review the erroneously admitted evidence 'in light of the entire record before the jury.'" *Dunnigan*, 137 F.3d at 125 (quoting *Collins*, 755 F.2d at 19). In making this due process determination, the Court should engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under New York State law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. *See Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001).

### b. Application

The Court agrees with the Appellate Division that the evidentiary ruling was erroneous under New York State law. As a general principle of evidence, lay witnesses must testify only to the facts and not to their opinions and conclusions drawn from the facts. It is left to the jury to draw the appropriate inferences arising from the facts. However, "for at least the last century, lay persons have been permitted to give opinion evidence only when the subject matter of the testimony was such that it would be impossible to accurately describe the facts without stating an opinion or impression."

*Kravitz v Long Is. Jewish-Hillside Med. Center,* 497 N.Y.S.2d 51, 55 (App. Div. 1985). *Cf. People v. Russell,* 567 N.Y.S.2d 548, 554 (App. Div. 1991) ("Applied to the case at bar, it is submitted that all the essential preconditions for the admission of the opinion evidence were satisfied. The People laid a careful foundation that the defendant had deliberately changed his appearance to thwart identification. All the witnesses who testified knew the defendant and saw him on or about the date of the commission of the offense. Thus, the evidence was properly admitted. Moreover, its probative value clearly outweighed any prejudicial impact."), *aff'd* 594 N.E.2d 922 (N.Y. 1992). In the case at bar, the trial court erred in introducing the portion of the 911 tape in which Brock gave her opinion on whether petitioner was driving purposefully at Rosa or not because, as the Appellate Division reasoned, "[h]ere, contrary to the People's assertion, it cannot be said that the witness's opinion or impression that the defendant hit the victim purposely was necessary to accurately describe the facts." *Haynes,* 833 N.Y.S.2d at 195.

Despite the state court's error in admitting the portion of the 911 tape that offers the witness's opinion as to petitioner's intent behind the wheel, the error did not deprive petitioner of his right to a fair trial. As discussed above, the prosecution provided clear evidence to prove that petitioner was guilty of manslaughter in the first degree beyond a reasonable doubt. Such evidence included testimony by eyewitnesses, including Brock (T. 1302-03), all of whom testified that petitioner drove his car right at Rosa and that prior to doing so, Rosa and petitioner had an argument that a jury could reasonably conclude provided petitioner with the motive to hit Rosa with his car. In addition, there was testimony that

after striking Rosa, petitioner got out of the car, walked towards Rosa and said "what now" or "look at you now." *See supra* Section III.B.1. Moreover, the trial court provided a limiting instruction to the jury that the jurors were not to consider Brock's opinion as to the driver's intent.[11]

In sum, the Appellate Division's conclusion that any error was harmless is neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, this claim does not provide a basis for habeas relief.

### 5. Ineffective Assistance of Counsel

Petitioner's ineffective assistance of counsel claim contains five separate arguments, namely: (1) counsel prevented petitioner from exercising his statutory right to testify before the Grand Jury and during trial; (2) failed to seek a plea bargain; (3) failed to fully investigate the case and call particular witnesses to the stand during trial; (4) failed to move for dismissal of the indictment or reduction of the charges that were inconsistent; and (5) failed to request jury instructions on the intoxication defense. To the extent the Appellate Division and County Court, Suffolk County ruled on the aforementioned arguments, their conclusions were neither contrary to, nor an unreasonable application of, clearly established federal law. Nor were they based on an unreasonable determination of

---

[11] Specifically, the trial judge stated: "During the trial, you heard a tape of a 911 call in which a witness referred to alleged purposeful conduct. It is impermissible for a witness to state an opinion as to what another person may have been thinking at any given time. Therefore, you may not consider the witness's testimony opinion as to what the driver may have been thinking in your deliberations." (T. 1890.)

the facts. In any event, as to all these claims (including the claims which were procedurally barred and for which no merits determinations were made by any state court), the Court concludes that they are without merit.

### a. Legal Standard

Under the standard promulgated in *Strickland v. Washington,* 466 U.S. 688 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: that (1) "counsel's representation fell below an objective standard of reasonableness," *id*. at 680, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, "constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland,* 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Greiner,* 417 F.3d at 319 (quoting *Rompilla v. Beard,* 545 U.S. 374, 408 (2005)). In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." *Greiner,* 417 F.3d at 319 (quoting *Strickland,* 466 U.S. at 691). "'A lawyer's decision not to pursue a defense

does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord,* 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id.* (citing *Strickland,* 466 U.S. at 690-91). Moreover, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 588 (quoting *Strickland*, 466 U.S. at 690-91).

The second prong focuses on prejudice to the defendant. The defendant is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that they "undermine confidence in the outcome." *Pavel v. Hollins,* 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland,* 466 U.S. at 694). "The question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole,* 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland,* 466 U.S. at 695). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v. Keane,* 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland,* 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland,* the determination of prejudice 'may be made with the benefit of

hindsight.'" *Hemstreet v. Greiner,* 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson,* 13 F.3d 528, 534 (2d Cir. 1994)).

This Court proceeds to examine the petitioner's claim, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin,* 366 F.3d 95, 100 (2d Cir. 2004).

### b. Application

### i. Failure to Allow Petitioner to Testify Before the Grand Jury and at Trial

Petitioner argues that his trial counsel was ineffective in preventing him from testifying before the Grand Jury because there is "a strong probability" that had petitioner testified, he would have been indicted for a lesser offense of manslaughter in the second degree. (Pet'r's Mem. at 37.) This is particularly true, petitioner argues, because there was no evidence that he had a motive to hit Rosa and the evidence "clearly demonstrated that the hitting of Rosa . . . [was] sudden and spontaneous," and not intended to "cause imminent death." (*Id.*) Furthermore, he argues that he would have testified that he was intoxicated and taking drugs at the time, which would further negate the intent element required for a conviction for first degree manslaughter. (*Id.* at 37-38.) Petition's argument that counsel was ineffective in not calling him to the witness stand is essentially identical to his argument for why he should have testified before the Grand Jury. Petitioner did not raise his arguments to the Appellate Division, solely bringing this argument to the attention of the County Court as part of his Section 440.10 motion. The County Court dismissed the claim on procedural grounds, concluding that it should have been

raised initially to the trial court and then on appeal. (Am. Pet. Ex. G at 2-3.) The Court did not address the claim on the merits. Respondent does not argue to this Court that this particular argument by petitioner for ineffective assistance of counsel is barred from review on procedural grounds. Instead, respondent argues that this claim is meritless because petitioner had no constitutional right to appear before a Grand Jury and essentially assented to trial counsel's strategy of not having him testify by not objecting at trial when the defense rested. (Resp't's Mem. at 35-36.) As a result, the Court addresses this claim on the merits in the first instance, and concludes that petitioner's argument is without merit.

It is axiomatic that there is no constitutional right to testify before the Grand Jury. *See Burwell v. Superintendent of Fishkill Corr. Facility*, No. 06 Civ. 787(JFK), 2008 WL 2704319, at *8 (S.D.N.Y. July 10, 2008) ("[T]here is no federal constitutional right to testify before the grand jury. In fact, there is no federal right to a grand jury in state criminal prosecutions."); *Affser v. Murray*, No. 04 CV 2715, 2008 WL 2909367, at *7 (E.D.N.Y. July 28, 2008) ("[C]ounsel's alleged failure to secure petitioner's presence before the grand jury does not constitute ineffective assistance" (collecting cases)). As respondent points out (Resp't's Mem. at 35), an attorney's failure to "effectuate the defendant's right to appear before the grand jury does not establish ineffective assistance of counsel." *See Murry v. Greene*, No. 9:06-cv-0322 (LEK/GJD), 2009 WL 3165637, at *8 n.9 (N.D.N.Y. Sept. 29, 2009) (citing *Kohler v. Kelly*, 890 F. Supp. 207, 213 (W.D.N.Y. 1994), *aff'd*, 58 F.3d 58 (2d Cir. 2005)).

Furthermore, there is no evidence that petitioner was prejudiced by not appearing

before the Grand Jury. *See Murray*, 2009 WL 3165637, at *8 n.9 ("Petitioner maintains that if he could have testified before the grand jury, he could have explained the facts of the case and refuted the finding that he committed a crime. However, any error in grand jury proceedings is cured by the subsequent conviction on the charge by the petit jury." (citing *Velez v. New York*, 941 F. Supp. 300, 316 (E.D.N.Y. 1996)). Petitioner was able to present to the jury via cross-examination his theory that he accidentally ran into Rosa and was simply trying to leave the parking lot through the only accessible exit. As noted above, there was sufficient evidence for a jury to conclude beyond a reasonable doubt that petitioner was guilty of first degree manslaughter. *See supra* Section III.B.1.

Petitioner argues that his trial counsel prevented him from testifying before the jury and that, had he been able to do so, the jury would not have convicted him because he would have testified that he was intoxicated and on drugs at the time of the incident. As an initial matter, petitioner does not state that he was unaware of his right to testify in his own defense if he so chose. His argument that he was allegedly prevented from testifying by trial counsel is unavailing. "Although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to have him testify." *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993), *cert. denied*, 510 U.S. 1019 (1993). Furthermore, the trial court

> has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred. Rather, if the defendant wants to testify, he can reject his attorney's tactical

decision by insisting on testifying, speaking to the court, or discharging his lawyer. Thus, waiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so.

*Id.* (quotation marks and citations omitted). In the instant case, petitioner waived his right to testify by failing to notify the trial court of his desire to do so despite whatever advice he may have received from trial counsel. Nor did petitioner attempt to discharge his trial attorney.

To the extent petitioner argues that his testimony would have been exculpatory, and trial counsel should therefore have put him on the stand, that argument is also unavailing. The decision whether to call a witness to the stand is a classic example of strategy. The "tactical decision of whether to call specific witness--even ones that might offer exculpatory evidence--is ordinarily not viewed as a lapse in professional representation." *United States v. Schmidt,* 105 F.3d 82, 90 (2d Cir. 1997), *cert. denied,* 522 U.S. 846 (1997); *see also United States v. Romero,* 54 F.3d 56, 60 (2d Cir. 1995). Trial counsel may have had good reason not to call petitioner to the stand because there were other means, such as cross-examination, to get petitioner's theory of the case across to the jury and was less risky if trial counsel believed that petitioner's credibility could, for example, be easily impeached by the prosecution.

As noted above, petitioner was not prejudiced by not testifying on his own behalf. In fact, by presenting evidence of intoxication and drug use petitioner may have been convicted of murder in the second degree. *See infra* Section III.B.5.b.v. There

was sufficient evidence for a jury to convict him on manslaughter in the first degree beyond a reasonable doubt.

In sum, the Court concludes that petitioner's argument that trial counsel was ineffective by preventing him from both testifying before the Grand Jury and at trial is unavailing. Petitioner did not have a right to testify before a Grand Jury, nor is there evidence that petitioner was prejudiced by failing to do so. Furthermore, petitioner waived his right to testify at trial. Trial counsel's decisions in not calling petitioner to testify before the Grand Jury and at trial may very well have been sound strategy. Nor has petitioner demonstrated that he was prejudiced by any alleged errors.

### ii. Failure to Seek a Plea Bargain

Petitioner argues that trial counsel should have attempted plea negotiations because petitioner admitted to hitting Rosa while being under the influence of drugs and alcohol. (Pet'r's Mem. at 37.) Petitioner appears to be arguing that he requested that his trial counsel obtain a plea bargain for a lesser offense of manslaughter in the second degree based on petitioner being intoxicated and on drugs at the time of the incident. (*Id.*; Cnty. Ct. 440.10 Br. at 7.) Respondent does not address this argument in its papers. Although the County Court did not address petitioner's argument explicitly, it concluded that petitioner's contentions are unavailing. (Am. Pet. Ex. G at 2.) The Court concludes that the County Court's conclusion was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts.

Failure to engage in plea negotiations by itself is not a ground for finding ineffective assistance of counsel. *See, e.g., United States v. Morel*, No. 07 Cr. 4899 (DC), 09 Civ. 8922 (DC), 2010 WL 2900318, at *4 (S.D.N.Y. July 22, 2010) ("[E]ven if Morel's claims that counsel did not attempt to reach an agreement were true, this would not constitute ineffective assistance [of counsel]. Counsel was not under any obligation to pursue plea discussions with the government. The appropriateness of pursuing a plea agreement with the government is a strategic decision ordinarily not second-guessed by the court. Even when a defendant specifically requests counsel to pursue a plea agreement, counsel's failure to do so is not ineffective assistance. Morel's claim thus fails the first prong of the *Strickland* test because Morel has not overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (citations and quotation marks omitted)); *D'Alessandro v. Fischer*, No. 01 Civ. 2551 LTS/DF, 2005 WL 3159674, at *20 (S.D.N.Y. Nov. 28, 2005) ("[T]his Court has held that an attorney's failure to pursue a plea bargain does not necessarily constitute ineffective assistance."); *Custodio v. United States*, 945 F. Supp. 575, 579 (S.D.N.Y. 1996) ("Where, as here, Custodio's trial counsel's assistance was otherwise reasonably effective, his counsel's alleged refusal to pursue plea bargaining opportunities cannot form the basis of an ineffective assistance claim.") Consequently, this argument is without merit and cannot provide a ground for habeas relief.

### iii. Failure to Interview and Call Particular Witnesses to Testify

Petitioner makes a generalized assertion that trial counsel failed to interview and call witnesses whose testimony "would have established reasonable doubt in the minds of the jurors" with respect to petitioner's

"intent and his level of intoxication on the day of the incident." (Pet'r's Mem. at 38.) Further, petitioner argues that his trial counsel failed to consult with him in reaching the decision to not interview and call any witnesses. (*Id.* at 40.) Petitioner asserts this was due to trial counsel's desire to essentially do the least amount of work possible and was a decision to gamble on trial counsel's own personality and talent. (*Id.* at 38, 40.) The Appellate Division concluded that petitioner's claim "to the extent that it [was] premised on his attorney's alleged failure to investigate and call certain witnesses, involves matters which are dehors the record and are not properly presented on direct appeal." *Haynes*, 833 N.Y.S.2d at 195. Petitioner raised the same claim to the County Court, Suffolk County in his Section 440.10 motion. The County Court denied petitioner's claim on the merits, concluding that trial counsel had strategic reasons for not calling the witnesses, among them the fact that raising an intoxication defense through the witnesses may have served to strengthen the prosecution's case that petitioner committed murder in the second degree. (Am. Pet. Ex. G at 2; *see also* Resp't's Mem. at 31-34.) The Court concludes that the County Court's decision was not contrary to, or an unreasonable application of, clearly established federal law. Nor was it an unreasonable determination of the facts.

Trial counsel's decision to not investigate additional witnesses and call specific individuals to the stand was not deficient, nor was any alleged error prejudicial. It is unclear what, if any, value would be added by the testimony of the witnesses proposed by petitioner. Petitioner refers to his *pro se* brief to the Appellate Division, which the Court will rely upon in examining petitioner's argument on habeas appeal. In his memorandum to the Appellate Division, petitioner listed eight witnesses who were eyewitnesses to the incident, some of whom were interviewed by detectives. (*Pro Se* Mem. to App. Div. at 9-10.) In particular, petitioner focuses on potentially exculpatory testimony of: (1) Ana Colon ("Colon") who allegedly would have testified that petitioner was "daze[d] and horrified" after hitting Rosa with his car and failed to turn himself in because he took the advice of his attorney to wait until the next day (*id.* at 9); (2) Wendy Leventhal ("Leventhal") who allegedly would have stated that it was a Spanish or Italian male who yelled at Rosa that "[y]ou got what you deserve" (*id.* at 10); and (3) Jean Piere Carolina ("Carolina") who allegedly would have testified that petitioner was "scared and worried" when he called Afanador to find out what happened (*id.*). As noted above, failing to call a witness, even one that could potentially provide exculpatory testimony, does not ordinarily lead to the conclusion that counsel was ineffective. The fact that there were eight individuals who were present at the scene does not mean that their testimony would have been helpful in any way. Trial counsel may have, for example, reviewed the testimony that most of these individuals gave to detectives and concluded based on that testimony that it was not worth investigating these witnesses or calling them to testify on petitioner's behalf. Petitioner solely points to potentially exculpatory testimony that could be derived from Colon, Leventhal and Carolina. Even if these witnesses would have testified to what petitioner alleges their testimony would be, it is unclear how that testimony would be helpful to petitioner.

Carolina's testimony would not have added anything new because Afanador already testified that petitioner was distraught when he called Afanador. (*See*

*also* Aff. of Glenn Green ("Green Aff."), Ex. E at 2 (sworn statement of Jean Piere Carolina)).

Petitioner also mischaracterizes the testimony Leventhal would have given had she been called as a witness. Petitioner relies on Leventhal's sworn statement in characterizing her testimony. Based on that statement, Leventhal would have testified that she saw a Spanish or Italian guy getting out of a black car that hit Rosa and, after stopping his car, he got out and bent over to tell Rosa that he got what he deserved. (Green Aff., Ex. H at 2 (sworn statement of Robin Wendy Leventhal).) It is undisputed that petitioner was the one who drove the black Impala into Rosa. Consequently, Leventhal's testimony would only serve to reinforce testimony already before the jury that petitioner made a statement to Rosa to the same effect after hitting him with the car. Thus, Leventhal's testimony would only serve to reinforce the jury's conclusion beyond a reasonable doubt that petitioner struck Rosa with his car intentionally.

Finally, petitioner's reliance on alleged testimony that Colon would give is similarly unavailing. Even if Colon would have testified that petitioner was dazed and horrified after hitting Rosa, her testimony, based on the sworn statement petitioner relies upon, would have supported the jury's conclusion beyond a reasonable doubt that petitioner intentionally struck Rosa. Colon would have testified that, prior to the incident, petitioner walked by himself out of the bar; her sworn statement did not indicate that petitioner showed any signs of intoxication. (Green Aff., Ex. B at 1.) She would also testify that petitioner subsequently drove the black Impala with which he hit Rosa out of the parking lot; Colon's statement did not suggest that petitioner showed any signs of intoxication

at that time that impaired his driving. (*Id.* at 2.) Even if Colon would have testified that petitioner did not turn himself in on the same day due to advice from his then-attorney, petitioner's trial counsel may have determined that it was not to petitioner's advantage to put Colon on the stand because of the likelihood that the prosecution would elicit from Colon the unfavorable evidence suggesting petitioner drove into Rosa intentionally.[12]

_____

[12] To the extent petitioner may also be relying on allegedly favorable testimony that could have been elicited from Bilal Morris, Patricia Deschamps, Edward Nevin, Eugene Higgins, and Philip Villegas, the Court agrees with respondent that the testimony of these individuals would either not be exculpatory or simply would not add anything to the evidence already before the jury. (*See* Resp't's Mem. at 31-34.) Morris's account contradicts that of Colon's. Deschamps's testimony would portray petitioner as being intoxicated around 9:00 p.m., many hours prior to petitioner driving into Rosa. Nevin's account is also contradicted by Colon's, would suggest that petitioner was aware of what he had done, and does not actually indicate how Nevin knew that petitioner was intoxicated. Higgins's testimony merely confirms that petitioner ran his car into Rosa, only to get out and yell at Rosa that he got what he deserved. Similarly, Villegas's testimony would not have offered an exculpatory account of what had happened. In sum, the Court concludes that it was reasonable trial strategy for petitioner's trial counsel to not call these individuals to testify on petitioner's behalf. Nor was any error by trial counsel prejudicial to petitioner because there is no basis to believe the additional testimony would have changed the jury's conclusion that the prosecution had proven beyond a reasonable doubt that petitioner intentionally drove into Rosa and that petitioner left the scene of the crime without alerting anyone as to what had happened.

In sum, the Court concludes that trial counsel's performance was not deficient. Trial counsel may very well have strategized that it was not in petitioner's interest to investigate additional eyewitnesses or call specific individuals singled out by petitioner to the stand. Furthermore, as described above, even if *arguendo* trial counsel committed any errors, such errors were not prejudicial to petitioner because there is no basis to conclude that the additional testimony would have changed the jury's conclusion that the prosecution had proven the charges of manslaughter in the first degree and leaving the scene of a crime without reporting it. Thus, the County Court's conclusion that this claim was without merit was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the entire record.

### iv. Failure to Move for Dismissal or Reduction of Inconsistent Charges

Petitioner relies on his Section 440.10 motion brief to the County Court to argue that his trial counsel failed to move to dismiss the indictment and reduce the charges. Essentially, petitioner asserts that trial counsel should have filed a motion to dismiss the indictment because petitioner was being "selectively prosecuted" instead of Cirilo, and that an evidentiary hearing should have been held to further develop this issue. (Cnty. Ct. 440.10 Pet'r's Aff. at 11.) Petitioner also argues that he was inconsistently charged with both first degree manslaughter and reckless indifference murder in the second degree, which required an inconsistent determination of *mens rea*. (*Id*. at 12-13.) Petitioner alleges that as a result, trial counsel also erred in failing to request a motion to dismiss the depraved indifference murder count. The County

Court did not address petitioner's selective prosecution claim directly but generally indicated that all claims not directly addressed were unavailing. (Am. Pet. Ex. G at 2.) The County Court dismissed petitioner's claim with respect to inconsistent charges on procedural grounds, noting that it should have been raised on direct appeal to the Appellate Division and did not address it in the alternative on the merits. (Am. Pet. Ex. G at 2.) Respondent, does not rely on the procedural bar in its memorandum. Instead, respondent argues that the two charges were consistent because the prosecution proffered evidence to support both (Resp't's Mem. at 37), and does not address petitioner's argument that trial counsel should have filed a motion to dismiss based on selective prosecution. In any event, the Court addresses petitioner's argument on the merits.

Trial counsel's failure to request a motion to dismiss based on selective prosecution was not deficient because such a motion would not have been successful. Petitioner's argument that he was selectively prosecuted is unavailing. It is uncontroverted that petitioner hit Rosa with his car, which caused Rosa to die. Even if Cirilo was involved in the altercation with Rosa, it was ultimately petitioner who killed Rosa. Certainly trial counsel cannot be deemed ineffective for making an argument for dismissal that cannot possibly be successful. *See, e.g., Bier v. Miller*, No. 05-CV-4312 (ENV), 2010 WL 2265132, at *3 (E.D.N.Y. June 1, 2010) ("[F]ailure to raise a motion does not constitute ineffective assistance of counsel if the motion would likely have been unsuccessful[,]" concluding that counsel was effective where petitioner's proposed motion to dismiss the indictment would have been unsuccessful. (citing *United States v. Gomez*, 644 F. Supp. 2d 362, 370 (S.D.N.Y. 2009)); *Boyd v. Hawk*,

965 F. Supp. 443, 450 (S.D.N.Y. 1996) ("If a speedy trial motion likely would have been unsuccessful, trial counsel's failure to make the motion does not constitute ineffective assistance.")

To the extent that petitioner is arguing that trial counsel should have made a motion to dismiss the indictment based on allegedly inconsistent charges or a motion to dismiss the murder charge, that argument is similarly unavailing for the same reasons. Two crimes for the same conduct requiring different *mens rea* may be charged in the same indictment. *See, e.g., Whitfield v. Ricks*, No. 01 Civ. 11398 (LAK), 2006 WL 3030883, at *12, *14 (S.D.N.Y. Oct. 24, 2006) ("An indictment is not defective simply because it charges a defendant with alternative offenses. Indeed, New York's Criminal Procedure Law specifically contemplates the possibility of being charged with inconsistent offenses. What it protects against is a conviction on inconsistent offenses[,]" further noting that "a defendant can be charged with alternative crimes, which may be inherently inconsistent, so long as he is not convicted of two inherently inconsistent offenses."); *People v. Jarrett*, 500 N.Y.S.2d 263, 264 (App. Div. 1986) ("Although two inconsistent charges . . . cannot both be proven beyond a reasonable doubt . . . they may be charged in the same indictment, provided the prosecutor proffers legally sufficient evidence to support both of the charges."). Petitioner clearly was found guilty solely of first degree manslaughter, the lesser of the two charges. Furthermore, the trial judge instructed the jury that they could not return a guilty verdict on both first degree manslaughter and depraved indifference murder in the second degree. (T. 1894.)

In sum, the Court concludes that petitioner's trial counsel was effective despite failing to request a motion to dismiss the indictment or reduction of inconsistent charges. It is clear that any such motions would not be successful. Furthermore, petitioner was not prejudiced by counsel's failure to request a motion to dismiss the murder count, having been convicted of the lesser-charged offense.

### v. Failure to Request Jury Instructions for Intoxication

Petitioner argues that trial counsel was ineffective in failing to request a jury instruction on intoxication. Without addressing this claim explicitly, the Appellate Division concluded that "the record . . . fails to support [petitioner's] claim since it demonstrates that trial counsel rendered meaningful representation to the [petitioner] at all stages of the proceedings." *Haynes*, 833 N.Y.S.2d at 195. This Court concludes that the Appellate Division's determination was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts. The Court agrees with respondent's argument that trial counsel's failure to argue the intoxication defense was part of his reasonable trial strategy because voluntary intoxication and drug use could support a conviction for a greater offense of depraved indifference murder. (Resp't Mem. at 24, 26.)

It was reasonable trial strategy for petitioner's trial counsel to not rely on petitioner's intoxication as a defense strategy. As respondent correctly points out, such a strategy may very well have led to petitioner's conviction on the second degree murder count because it would have supported a finding of reckless indifference.

See, e.g., *People v. Artis*, 631 N.Y.S.2d 907, 908 (App. Div. 1995) ("[T]here is some evidence that the defendant was intoxicated at the time of the murder, a circumstance which would support a finding of depraved indifference murder."); *People v. Kirkpatrick*, 575 N.Y.S.2d 718, 718 (App. Div. 1991) (defendant was convicted of depraved indifference murder where he imbibed at least two six-packs of beer and witnesses testified that he was intoxicated); *People v. Register*, 60 N.Y.2d 270, 280-81 (N.Y. 1983) ("[T]he element of recklessness itself -- defined as conscious disregard of a substantial risk -- encompasses the risks created by defendant's conduct in getting drunk. . . . the risk of excessive drinking should be added to and not subtracted from the risks created by the conduct of the drunken defendant for there is no social or penological purpose to be served by a rule that permits one who voluntarily drinks to be exonerated from failing to foresee the results of his conduct if he is successful at getting drunk.").[13] Consequently, petitioner

cannot demonstrate that his trial counsel's performance was deficient, or that it somehow prejudiced petitioner. Thus, the Appellate Division's conclusion was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the entire record.

6. Excessive Sentence

In this case, petitioner was convicted and sentenced to twenty-two years for manslaughter in the first degree, followed by five years of post-release supervision. Petitioner argues that the sentence imposed was unauthorized, illegally imposed or otherwise invalid as a matter of law; he argues that his sentence totals twenty-seven years, when the five years of post-release supervision is added to the twenty-two years of incarceration. (Pet'r's Mem. at 43-44.) Petitioner is correct in pointing out that the maximum penalty allowed for manslaughter in the first degree, a class B violent felony, is twenty-five years. (*See* N.Y. Penal Law §70.02[3][a]). However, petitioner is wrong in his assertion that the five year post-release supervision makes his sentence twenty-seven years, thus exceeding the maximum sentence allowed under the statute. Thus, the Court concludes that the Appellate Division's determination that petitioner's sentence was not excessive, *Haynes*, 833 N.Y.S.2d at 196, is not contrary to, or an unreasonable application of, clearly established federal law.

"In 1998, the New York Penal Law was amended to provide that individuals who committed felonies after September 1, 1998,

---

[13] The elements of depraved indifference murder were recently redefined in *People v. Feingold*, 852 N.E.2d 1163, 1166 (N.Y. 2006) (interpreting a *mens rea* element into depraved indifference murder, explaining that a defendant must have been recklessly indifferent, depravedly so, to whether his conduct will lead to someone's death). However, this decision was inapplicable to petitioner at the time his trial counsel was defending petitioner before the jury. The New York Court of Appeals ruled that its holding in *Feingold* does not apply retroactively. *See Policano v. Herbert*, 859 N.E.2d 484, 495-96 (N.Y. 2006). Although petitioner's conviction became final after *Feinberg* was issued, since the Court of Appeals denied petitioner leave to appeal in 2007, that does not affect the Court's conclusion that trial counsel was effective in not arguing an intoxication defense because at the time petitioner was facing the jury, *Feinberg* had not been issued and

counsel was in no way expected to predict what may happen before the Court of Appeals many years later.

and who were sentenced to a determinate sentence of incarceration, would also receive a *mandatory* term of post-release supervision." *Van Gorden v. Superintendent*, No. 9:03-CV-1350, 2007 WL 844901, at *10 (N.D.N.Y. Mar. 19, 2007) (emphasis in original) (citing N.Y. Penal Law § 70.45(1)); *see also Willett v. Berbary,* 456 F. Supp. 2d 404, 408 n.4 (W.D.N.Y. 2006)). In this case, as in *Van Gorden*, the trial court judge informed petitioner, at sentencing, that "the mandatory 5 year period of post-release supervision be imposed following the 22 year sentence." (Sen. T. 19.) "The statute is quite clear that the periods of post-release supervision are *mandatory* and are *in addition to* the determinate sentence of incarceration imposed." *Van Gorden*, 2007 WL 844901, at *10 (emphasis in original).[14]

For the purpose of habeas review, "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Alfini v. Lord*, 245 F. Supp. 2d 493, 502 (E.D.N.Y. 2003) ("It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law." (collecting cases)); *McCalvin v. Senkowski*, 160 F. Supp. 2d 586, 589 (S.D.N.Y. 2001) ("Sentencing decisions are not cognizable on habeas corpus review unless the sentence imposed falls outside the range prescribed by state law."); *Thomas v. Senkowski*, 968 F. Supp. 953, 956 (S.D.N.Y. 1997) (dismissing excessive sentence claim where the petitioner's sentence fell within

the range prescribed by state law). Therefore, since petitioner's sentence was within the statutorily prescribed range, there is no federal question for habeas review.[15]

* * *

In sum, having carefully examined the merits of all of petitioner's claims, the Court concludes that petitioner has failed to demonstrate that any state court ruling was contrary to, or an unreasonable application of, clearly established federal law, nor that any state court decision was an unreasonable determination of the facts in light of the record as a whole. Petitioner's claims that the evidence was insufficient for a jury to convict him of manslaughter in the first degree, as well as his claim that he was improperly limited in cross-examining Cirilo, are both procedurally barred from review. In any event, both of these claims, as well as all of the other claims petitioner raises in his habeas petitioner, are entirely without merit.

---

[14] The statute, in relevant part, states that "[t]he period of post-release supervision for a determinate sentence . . . shall be five years." N.Y. Penal L. § 70.45(2).

[15] In any event, even if the Court could review the sentence within the range prescribed by state law, the Court would find no basis to conclude that petitioner's sentence was grossly disproportionate to the crime committed so as to violate the Eighth Amendment given the nature of the criminal activity that was the subject of the conviction in the instant case.

## IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 8, 2011
      Central Islip, New York

Petitioner appears *pro se*. The attorney for respondent is Thomas J. Spota, District Attorney of Suffolk County, by Glenn Green, Assistant District Attorney, 200 Center Drive, Riverhead, New York, 11901.